Syfco v. Encompass Indemnity Company. Mr. Tierney for the appellate. Good morning, you may proceed. Your Honor, this is an appeal of the District Court's ruling that provided that the Encompass Insurance Company homeowners policy did not provide coverage for water damage caused by a broken drain pipe. The District Court based its ruling on two issues. First, the District Court concluded that a policy exclusion for water damage caused by seepage would exclude coverage for damage caused by a broken drain pipe. We argue that the policy in this case makes a distinction between damage caused by seepage and damage caused by leakage, and that in this case the damage was caused by leakage. The broken drain pipe leaked, it didn't seep. We base that argument on the 70 pages long. In our briefs, we refer to two parts of the policy, the 23-page original policy and the 20-page amendment to that policy. We focus on the section in the original policy that excluded coverage for water damage caused by seepage or leakage, but limited that exclusion to only condominiums, cooperatives, or rental property. When Encompass amended the policy, they changed that section of the policy in two ways. They made that exclusion applicable to all real property, so it's now applicable to the home in addition to condominiums and cooperatives, but when they made the change, they removed the word leakage. They said that policy now excludes damage for seepage, but at the same time they made that policy amendment, they added coverage for remediation of biological irritants. In that section of the policy, as an exclusion to that additional coverage, they do use the phrase leakage and seepage. It's our position that the policy in this case makes a clear distinction between leakage and seepage. It uses the terms differently. We would submit that seepage is damage that may come through a wall, through a floor, or that seeps through an object. Leakage is damage that results from a break in a pipe or something of that nature, but the point is this policy does not define leakage or seepage. In the cases that I'm familiar with in the insurance policies that I've reviewed, it is common well-tested language. Continuous or seepage is what we see in the reported cases. It's what we see in the policies that we review. This policy amendment, presumably drafted by lawyers, by underwriters, who put some time and effort into this, removed that word leakage from this exclusion. Is there a requirement that this all be approved by the Insurance Regulatory Authority in the state to which it implies it? There is a requirement in Minnesota that the language be approved. I'm not sure that this particular language was, I don't know that this particular language was at issue during the review process. Again, so I understand, you say the policy removed the leakage exclusion? It removed, the original policy excluded leakage or seepage. When they did the policy amendment, it took out the word leakage, just left in the word seepage. So the amended policy now applies to all real property, but the amended policy says we exclude water damage caused by seepage. It does not say seepage or leakage. You say none of this damage occurred by seepage? You know, I think, yeah, I do. I say none of the damage. Not a, not a bit of it, because you know, if you use your dictionary, I think you use Miriam Webster. I did. If you look at some of those, water seeped in through a crack, you, you've, you've undoubtedly read that. Right. Some of that, water seeped in through a crack sounds kind of like what happened at least to some of this damage. Well, I, I would disagree with that. I could see a crack in a wall where water might seep through it. We're talking about a... But this is a crack in a pipe. In, in a drain pipe, underneath the shower, so that when somebody takes a shower, there's a crack there and the water comes out quickly, repeatedly, but quickly through that break and repeatedly over time. It's not, I, I would argue that it doesn't seep through. At, at, at most though, your honor, it would at least be a jury question on this. If we're dealing with seepage or leakage, I think it's pretty clear that when you have a broken pipe, the water leaks from the broken pipe. But at a minimum, I would argue there'd be a jury question on that. The second exclusion relied on by the trial court is not an exclusion at all. The policy, when amended, added a coverage for remediation of biological irritants, contaminants, or spores required to repair or replace covered properties. So first, before we go to the next slide, I'd like to say that the remediation of biological irritants is defined as, the policy defines remediation as the reasonable and necessary treatment, removal, or disposal of biological irritants, contaminants, or spores required to repair or replace covered properties. So first, before we get to this additional coverage, there's got to be a covered peril. We argue that in this case, there is. The additional coverage that is provided is that if somebody needs to come into this house and treat or remove or dispose of biological irritants before you can conduct the repairs, there's no coverage for that. And we agree that there is no, and we never made a claim for any additional coverage for remediation of biological irritants. There was no need for anybody to come in and treat or remove the mold before the repair work was done. You know, this is... But remediation has, that one has the exclusion for seepage or leakage, right? That's correct. So that's a good reason for you not to claim under that one, right? That is the reason we don't claim under that one. Thank you. Proceed. And I think if that language was used in the first section I'm dealing with, we wouldn't be here today. That does. And of course, at the same time, that policy amendment is made for this section. So in this case, we're claiming there is no, there was no remediation. This is an additional coverage. I would submit that you can't, through an additional coverage, ever exclude an otherwise covered peril. You just can't do that. It's inconsistent with the way any insurance policy is designed. We've got additional coverages, we've got exclusions, and you just can't do that. Now, Mr. Morse is the cleanup person, right? He's the contractor. Right. And he says, every day it leaked, that's good for you, but he ends the sentence by saying it created a mold bed. It did. M-O-L-D bed. And we agree with that. Well, so why, why doesn't it fall under the, a lot of what you're claiming, why doesn't it fall under the biological point, and it has to be excluded by seepage or leakage? By Mr. Morse's own sentence there. The biological irritant is an additional coverage, okay? We agree that we're not entitled to the additional coverage to remove, if you needed to remove or treat before the repair work was done, that would not be covered. If a biohazard person had to come in here, take out asbestos, take out mold, before the contractor could come in and do his work, there'd be no coverage for that. We agree with that. That didn't happen in this case. There was no need to remove the mold before the contractor did his repair, at a minimum. It sounds like Mr. Morse is saying there was a mold bed, and that would need to be done. It was a mold bed, but that mold bed did not need to be removed before he did his contracting work. You'd leave the mold there? Even if I don't get it. It came out with the water and with the other contracting work he did, but there was no need for additional charges, additional costs provided by this additional coverage to do that before the repair work was done. And that's how the policy reads. It is the reasonable and necessary treatment, removal, or disposal of biological irritants required to repair or replace the covered property. So we argue that this is an additional coverage. If you need the biohazard people to come in, remove something, so that the contractor can come in and do his work, there's no coverage for that additional charge. Didn't happen in this case. But again, at a minimum, some of the work done by Mr. Morse was necessary regardless of whether there's mold or not. There's standing water under an elevated floor. The floor had to be removed. The water had to be removed, whether it had developed into mold or not. I mean, if you take this to the extreme, and I don't like to do that, but if you leave the water there longer, it will always develop into mold. And in this case, there's some issue, at least not before this court necessarily, but some issue as to whether the fault, the reason this developed into mold and mildew, at least in part, was because Encompass didn't step to the plate in a timely manner. So we are asking this court to reverse the trial court on both of these issues and remand the case. Unless there's further questions, this case was not quite as complicated as your last case. I'll sit. Very well, you could use your time for a rebuttal, right? Mr. Davidson, good morning. You may proceed. Good morning, your honors. May it please the court and counsel, my name is William Davidson. I represent the Appalee Encompass Indemnity Insurance Company. Whether it's as complicated as the previous case or not, it's certainly a smaller case, and the issues are more discreet, perhaps. We believe that Chief Judge Davis correctly granted summary judgment to Encompass, that he applied the unambiguous policy language here, including the two exclusions that we've relied upon. He did not reach the third argument that we dealt with, an exclusion dealing with the insured's failure to cooperate. But I do believe that that factual context that's part of the record, again, undisputed, does color Chief Judge Davis' decision. Were all of the procedures gone through with the insurance regulator in this matter to get this cleansed up and at least approved by that agency? I believe it was, your honor. It's not part of the record here. We are dealing here specifically with the amendment of home and dwelling fire provisions for Minnesota. Presumably, and there's nothing in the evidence or the record to suggest otherwise, that this was an unapproved amendment to this standard homeowner's policy. So we don't really know what the answer to that question is. We do not know what the Department of Commerce says in Minnesota as to that issue. It was certainly not an issue raised by the appellant. They did not contest the approval or the language here in the amendment. They are simply contesting Judge Davis' application of the word seepage. And we would contend, and we would ask this court, as we addressed in the briefs, for the court to look at the unambiguous language of the exclusion. This exclusion provides that coverage is excluded by the continuous or repeated seepage of water from a plumbing system or a plumbing fixture. You believe seepage and leakage mean the same thing or not? They are essentially the same thing, your honor, but we don't even need to compare or contrast them for purposes of this exclusion. Certainly, my case would be much stronger if we were before you, and there's more case law out there that talk about seepage or leakage. But we are dealing here with the exclusion that we're looking at. And I know that appellant wants to create a fact issue and create an ambiguity by pointing to previous language that was- In the same policy. In the original policy that has since been amended to provide some additional coverages and to exclude some additional coverages, no different than any other endorsements that might exist. This was not a policy- These are your forms and they're ISO forms. They are. In regard, yeah, they're ISO forms. So they're your and your industry's words here. So I don't know. If you use seepage and leakage on your ISO approved forms here that you give to all the state regulators, and then back here you just use seepage, I don't know. I think you think they mean different things. Well, they have, appellant has failed to identify, I believe persuasively, what the differences would be in this case on the facts of this case. To suggest that the seepage or that the flow of water through this crack in this pipe, and when this court's job is to look at the plain language of the policy that was in effect. And to look at the word seepage. And Miriam's dictionary, the one that they cited, and the dictionaries that we've reviewed, all suggest the same thing, that the seepage of water through a crack would fit with this situation here. Again, the temporal component is certainly met. In other words, if the pipe had broken suddenly and had not been cracked over the interval, you would have coverage? I mean, there would be coverage? There would certainly be a better argument for coverage. Well, I don't want to talk about better arguments. What does this policy protect? I think it's every homeowner's nightmare. Come home, your basement is flooded. Under what circumstances would this policy ever cover anybody? You could say the basement's flooded, the water seeped down through the floor, I'm sorry, we don't pay. Quintessential example, Your Honor, would be a burst water heater. That would not- I'm not talking, no, let's talk about a burst water pipe. All right, a burst water pipe that caused a sudden damage, as opposed to seepage or leakage, depending on the situation, over weeks, months, or years. You're concerned about the extent of the damage, then, I take it? Well, the extent of the damage and the extent of damage over time, because this seepage occurred over weeks or months or years. Well, that might be a question of proportionality, or that could be determined. And would it be beyond the realm of reason that a jury or somebody could determine how much of this was caused by relatively sudden leakage? They might, if there was evidence to suggest what the extent of that damage would be. But we're talking about a policy that is very clear, unambiguous. We, Encompass, did not choose to ensure the risk of continuous or repeated seepage over weeks, periods of time, or months, or years from plumbing fixtures. And appellant's construction of the seepage-leakage distinction, seepage is only somehow oozing up through the floor or through the wall, makes superfluous the rest of the language of that exclusion. Because we're talking about from a plumbing system, or from within or around plumbing fixtures, including specifically showers, shower stalls, shower baths, tub installations. And so appellant's construction is asking this court to not give full effect to the entire language of the exclusion, or the entire language of this policy. You think they mean the same thing, seepage and leakage? They essentially mean the same thing. I'm sure there are some- That about has to be your position by the time we're done talking about it, doesn't it? Well, I'm sure that hypothetically there are some fact situations where there might be a distinction. But essentially, certainly on these facts, they do mean the same thing. We're talking about on the facts of this case. Seeping, the oozing, the transfer of water through this crack in this pipe over at least weeks is excluded. I see the argument about why should our company have to pay for that? That it could have been remedied much earlier as it would have been had the pipe broken and there'd have been a gush of water, their damage would have been relatively small. Good argument, I suppose. And that's certainly a basis for why the policy was written differently, or included this exclusion. And certainly under the remediation issue, where we're talking about mold that had gunk. Well, that comes back to the extent of the coverage that this policy should have to provide. In other words, had it been detected sooner, the cleanup would have been relatively minor. I guess I'm back to the homeowner's nightmare having experienced some of that. I guess we all have gotten to the point now, I write myself a little note, and Mrs. Wallman joined me to coming out here for court, little post-it note. Turn off the water, turn down the water heater, turn down the thermostats. And then sometimes I'll drive and I say, did I turn off the water? I've never driven back to check. But anyway, go on. Fair enough, your honor. As to the remediation coverage here, obviously appellants are trying to run away from that because it has an unambiguous, and they don't contend otherwise, seepage or leakage exclusion. And if Judge Davis was correct that the removal, the tear out, the gutting of this entire basement, because as Mr. Davis, their contractor, says, the walls were covered, the framing, the wood under the sub-flooring was all rotted because of water damage and because of mold. That is excluded and they're not contesting the unambiguous nature of that exclusion. So the word seepage or leakage are two pages in this policy, almost exactly two pages from the word leakage alone, right? From the word seepage alone, yes. A-132. Thank you, I said it wrong. A-132 and I believe A-134, your honor, in our brief. And they are, and I wish that they had used seepage or leakage earlier. But the task before this court is simply whether or not the water damage that occurred here was a result of repeated seepage of water. And you agree we have to take all the facts favorable to him, like Mr. Morris' letter. Mr. Morris' letter, but also Mr. Morris' deposition testimony that we cited and quoted. And yes, Mr. Morris colloquially refers to leakage every day. And certainly the repeated element has been satisfied, we believe. There's certainly no evidence to the contrary there, and no argument that the repeated element has been met. But when you're looking at whether or not this was seepage of water, I would again urge this court to give full effect to the rest of the terms of that exclusion. Because by appellant's definition of seepage, apparently the plumbing fixtures or the plumbing systems that are described in that exclusion mean nothing. Because seepage under their definition can't occur from a plumbing fixture or a plumbing system. Or at least I've heard no argument from them, have seen no arguments in their brief to suggest that seepage could mean anything in terms of a plumbing fixture or a plumbing system. So perhaps, Judge Benton, I've come full circle, and I finally acceded to your suggestion that they have to mean the same thing. On the facts of this case, they do mean the same thing. In theory, could they mean something different? I can't tell you what the underwriter thought when they created this amendatory endorsement. But they certainly used unambiguous language that applies to the facts of this case. And on this situation, we believe that this court should affirm Chief Judge Davis' decisions. We would ask for that relief, and if the court has any other questions, I'll cede my time. Thank you. Thank you. I'll be brief. Mr. Attorney, you may proceed, Ryan. I'll be brief, but what I heard counsel argue is that the terms initially were essentially the same. That he had wished the people had used different language in the policy. This insured is dealing with a 70 page homeowner policy. It contains a- I wondered about that. I've never heard of that. I insure mine comes every year, and I notice my premium goes up a little bit. And they seem to, well, we shouldn't interject our personal experiences, okay? I'm trying not to. I was dealing with a policy. With 70 pages? Pardon me? Well, Judge Benton obviously has all 70 pages there. I don't want to do some of the- No, I'm sorry. I'm sorry. No, no, same difference. I'm sorry. It is a 70 page policy, and- It must be a commercial, well, it's not a homeowner's policy. It is? Homeowner's policy. Well, part of it originally was rental. That's the reason this is so confusing. Certain provisions were initially rental, and those are stricken out, the amendments. Go ahead, though. We're off base. Go ahead. I'm not sure that- Yeah, the original seepage and leakage was for residences rented. It applied it to. Yeah, and condos and cooperatives. Go ahead. This is a policy that was issued to a homeowner as a homeowner policy. It has provisions in it that talk about cooperatives. It talks about a lot of things in the policy. That's where the seepage and leakage is. Correct. That's where it started out. But it is a homeowner's policy. And to get to a point your honor made early on, the entire 70 page policy is delivered to the insured. This isn't a case where there's an amendment and now we're talking about some drafts. This entire policy is delivered to the insured. And certainly the language I think could be clearer. I think they can concede that. They wish there were different language used. But we're dealing with a homeowner's policy and we're dealing with insurance contract principles of Minnesota law. Ambiguity is construed against the insured. We are dealing with a policy exclusion, at least in the first instance. They have the burden of carrying that issue. We would argue that they haven't carried it. There is at a minimum ambiguity in this section that needs to be construed against the drafter of this 70 page document. There are no further questions. No, thank you. We thank both sides for the argument. It's well done.